UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff, | ) ) | MAR - 9 2006 |
| v. | ) ) ) No. | U. S. DISTRICT COURT E. DISTRICT OF MO. |
| RICHARD T. SADDLER, | ) ) | **4:06CR00166DJS** |
| Defendant. | ) | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

Beginning in or about 2002, and continuing to the date of this indictment, with the exact dates unknown to the Grand Jury, in the Eastern District of Missouri and elsewhere, **RICHARD T. SADDLER**, the defendant herein, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of material, false and fraudulent schemes, representations and promises.

2. At all times pertinent to this scheme, **RICHARD T. SADDLER**, the defendant herein, claimed that he was a representative for Omicron Capital or First Capital Financing.

3. At all times pertinent to this scheme, **RICHARD T. SADDLER**, the defendant herein, represented to potential clients that through Omicron Capital or First Capital Financing, he could, for a fee, obtain commercial financing.

4. At all times pertinent to this scheme, **RICHARD T. SADDLER**, the defendant herein, purported to operate First Capitol Financing and Omicron Capital from 340 Carr Manor, Ballwin, Missouri.

5. This scheme and artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations and promises was carried out and intended to be carried out in the following manner.

   a. While residing at 340 Carr Manor, Ballwin, Missouri, **RICHARD T. SADDLER**, the defendant herein, sought to purchase a new residence located at 38 Clermont Lane, Ladue, Missouri. On or about September 14, 2004, **RICHARD T. SADDLER**, the defendant herein, contracted to purchase 38 Clermont Lane for $605,000.

   b. **RICHARD T. SADDLER**, the defendant herein, contacted American Equity Mortgage, 11933 Westline Industrial Drive, St. Louis, Missouri, to obtain a mortgage for 38 Clermont Lane. For a fee, American Equity Mortgage was to prepare and review mortgage application materials and secure funding.

   c. On or about October 6, 2004, **RICHARD T. SADDLER**, the defendant herein, completed a Uniform Residential Loan Application for a mortgage for 38 Clermont Lane. **RICHARD T. SADDLER**, the defendant herein, made a series of material, false and fraudulent statements and representations on the Uniform Residential Loan Application. **RICHARD T. SADDLER**, the defendant herein, did so to induce American Equity Mortgage to approve his mortgage application and to obtain funds for his mortgage.

   d. **RICHARD T. SADDLER**, the defendant herein, falsely and fraudulently represented that he was self-employed for five years with Hercules Manufacturing with a monthly income in excess of $50,000. **RICHARD T. SADDLER**, the defendant herein, in support of the mortgage application, submitted bank statements for Hercules Manufacturing, d/b/a St. Louis Retaining Wall Company when **RICHARD T. SADDLER**, the defendant herein,

2

neither owned nor was employed by Hercules. The defendant further falsely represented on the loan application that he had $120,000 in a savings account at Jefferson Bank that was to be the source of his down payment.

e. American Equity Mortgage relied upon the defendant's material false and fraudulent statements and representations in deciding to approve the defendant's loan application. American Equity Mortgage then chose Argent Mortgage Company, 1701 Golf Road, Rolling Meadows, Illinois, to be the ultimate source of the funding.

f. American Equity Mortgage transferred the Uniform Residential Loan Application, along with supporting documents, to Argent Mortgage to fund the defendant's loan. American Equity Mortgage provided these documents to Argent Mortgage via wire, telefax and FedEx, an interstate carrier.

g. On or about November 4, 2004, American Equity Mortgage sent a complete loan application packet from St. Louis, Missouri, via FedEx to Argent Mortgage Company in Rolling Meadows, Illinois. Based upon material false and fraudulent statements and representations of **RICHARD T. SADDLER**, the defendant herein, Argent Mortgage approved the funding of the defendant's mortgage.

h. Once funding was approved on or about November 5, 2004, Argent Mortgage wire transferred approximately $484,000 in funds from Deutsche Bank, New York, New York, to U.S. Bank, St. Louis, Missouri. U.S. Bank was the depository bank for Investor's Title Company, where the real estate closing was to take place.

I. Had American Equity Mortgage and Argent Mortgage been aware of the material false and fraudulent promises and representations made by the defendant, they would not have

3

approved the mortgage or funded the defendant's mortgage.

j. While **RICHARD T. SADDLER**, the defendant herein, had fraudulently obtained approximately $484,000.00 in funds to purchase 38 Clermont Lane, he still needed to provide a down payment in excess of $100,000.00.

k. In an effort to secure a down payment, **RICHARD T. SADDLER**, the defendant herein, falsely and fraudulently represented that he headed up the St. Louis office of Omicron Capital, a New York Company. In October 2004, the defendant contacted a representative of Genomed, an Olivette, Missouri company. Genomed was seeking $1,800,000 in funding.

l. **RICHARD T. SADDLER**, the defendant herein, advised Genomed that he could secure $1,000,000 in 2004 and $800,000 in March, 2005. The defendant instructed Genomed representatives that he required and they were obligated to pay a $110,000 "finder's fee."

m. **RICHARD T. SADDLER**, the defendant herein, falsely and fraudulently promised Genomed that in exchange for the $110,000 "finder's fee," all of the necessary funding would be arranged.

n. **RICHARD T. SADDLER**, the defendant herein, falsely and fraudulently represented to Genomed that the $110,000 would be placed in an escrow account and withdrawn only when the funding was secure. **RICHARD T. SADDLER**, the defendant herein, further falsely and fraudulently stated that the $110,000 could not be released from escrow without his signature and the signature of a Genomed representative.

o. **RICHARD T. SADDLER**, the defendant herein, directed that Genomed wire transfer $110,000 to the Investor's Title depository account, which **RICHARD T. SADDLER**, the defendant herein, claimed was the escrow account for the advance fee.

p. On or about November 5, 2004, Genomed wire transferred the $110,000 advance fee from National City Bank of the Midwest to the Investor's Title depository account at U.S. Bank. These funds were then falsely and fraudulently used by **RICHARD T. SADDLER**, the defendant herein, as a down payment to purchase the Clermont property.

q. **RICHARD T. SADDLER**, the defendant herein, then further falsely and fraudulently advised Genomed that he had to release the funds and was having difficulty locating foreign investors due to the "Patriot Act."

6. On or about November 4, 2004, within the Eastern District of Missouri and elsewhere,

### RICHARD T. SADDLER,

the defendant herein, for the purpose of executing this scheme and artifice to defraud, and in attempting to do so, to obtain money or property by means of false and fraudulent pretenses, representations and promises, did knowingly and willfully deposit and cause to be deposited and sent by a commercial interstate carrier, an envelope containing mortgage application documents from American Equity Mortgage in St. Louis, Missouri, to Argent Mortgage, Rolling Meadows, Illinois.

In violation of Title 18, United States code, Section 1341 and 2.

### COUNT II

The Grand Jury further charges that:

1. The allegations of paragraphs One through Five of Count I of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. On or about November 5, 2004, in the Eastern District of Missouri and elsewhere,

### RICHARD T. SADDLER,

5

the defendant herein, for the purpose of executing this scheme and artifice to defraud, and in attempting to do so, to obtain money or property by means of false and fraudulent pretenses, representations and promises, did knowingly cause to be transmitted in interstate commerce, certain signs, signals, and sounds by means of a wire communication, that is, a wire transfer of funds sent from Deutsche Bank, New York, New York to U.S. Bank in St. Louis, Missouri.

In violation of Title 18, United States code, Section 1343 and 2.

## COUNT III

The Grand Jury further charges that:

1. The allegations of paragraphs One through Five of Count I of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. This scheme and artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations and promises, was carried out and intended to be carried out in the following manner.

a. On or about November 25, 2003, **RICHARD T. SADDLER**, the defendant herein, represented to Heritage Management, Inc. that he would obtain approximately $813,000 in computer or copier equipment along with financing. **RICHARD T. SADDLER**, the defendant herein, advised representatives of Heritage Management Inc. that they would be required to pay an advance fee of $125,000. Heritage Management Inc. provided management services for Avalon Health Care, Inc.

b. On or about December 10, 2003, at the direction of **RICHARD T. SADDLER**, the defendant herein, Heritage Management issued Check Number 0000550176 in the amount of $125,000, made payable to First Capital Finance.

c. On or about December 10, 2003, Avalon Healthcare sent the $125,000 check via UPS, a commercial interstate carrier, from Avalon Health Care, Inc., 55 E. 400, Suite 200, Salt Lake City, Utah, to **RICHARD T. SADDLER**, the defendant herein, at First Capitol Financing, 340 Carr Manor Court, St. Louis, Missouri 63102.

d. **RICHARD T. SADDLER**, the defendant herein, failed to obtain funds for the computer systems and failed to return funds.

e. **RICHARD T. SADDLER**, the defendant herein, promised a full refund and on January 5, 2004, wire transferred $25,000 in funds to Avalon Health Care, Inc.

f. On numerous occasions throughout January 2004, **RICHARD T. SADDLER**, the defendant herein, promised Avalon Health Care that he would return the $100,000 balance he had received.

g. **RICHARD T. SADDLER**, the defendant herein, failed to return the $100,000 in funds that he received from Heritage Management inc. and Avalon Health Care, Inc.

h. **RICHARD T. SADDLER**, the defendant herein, thereafter used the $100,000 to pay his mortgage, and other personal expenses.

6. On or about December 10, 2004, within the Eastern District of Missouri and elsewhere,

### RICHARD T. SADDLER,

the defendant herein, for the purpose of executing this scheme and artifice to defraud, and in attempting to do so, to obtain money and property by means of material false and fraudulent pretenses, representations and promises, did knowingly and willfully cause to be deposited and to be sent and delivered by a commercial interstate carrier, an envelope containing a $125,000 check from Avalon Health Care, Inc., Salt Lake City, Utah, to Mr. Richard Saddler, First Capital

Financing, 340 Carr Manor Court, St. Louis, Missouri.

In violation of Title 18, United States Code, Sections 1341 and 2.

Missouri.

## COUNT IV

The Grand Jury further charges that:

(FORFEITURE COUNT)

1. The allegations of Counts I through III in this Indictment are hereby repeated and re-alleged as if fully set forth herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982.

2. The property, real and personal, of defendant **RICHARD T. SADDLER** obtained, directly or indirectly, as a result of the violation of law set out in Counts 1 through III of this Indictment and which was used or intended to be used in any manner or part to commit or facilitate the commission of such violations while defendant **RICHARD T. SADDLER** engaged in the criminal conduct alleged in Counts I through III of this Indictment, is property subject to forfeiture under the provisions of Title 18, United States Code, Section 982(a)(2)(A).

3. Property subject to forfeiture as set out in paragraph 2, above, includes, but is not limited to:

(a) $719,000 in United States currency.

4. If any of the property described in paragraph 2, above, as a result of any act or omission of the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third person;

8

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; and/or

(e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraphs 2 and 3 above, or elsewhere, as being subject to forfeiture.

A TRUE BILL

_____
FOREPERSON

CATHERINE L. HANAWAY
United States Attorney


_____
HOWARD J. MARCUS #16980
Assistant United States Attorney