UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 4:06CR00166 DJS |
| | ) |
| RICHARD SADDLER, | ) |
| | ) |
| Defendant. | ) |

## **SENTENCING MEMORANDUM**

COMES NOW N. Scott Rosenblum, and files the following memorandum on behalf of Defendant, Mr. Richard Saddler ("Saddler").

Lewis is scheduled for sentencing on September 8, 2006. 18 U.S.C. § 3553(a) assigns to this Court the duty to impose a sentence that is sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing. Those purposes are as follows:

    (A)    to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

This Court must consider the factors below in calculating the required minimally sufficient sentence:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2)    the need for the sentence imposed to accomplish each of the purposes of sentencing listed in § 3553(a)(2);
    (3)    the kinds of sentences available;
    (4)    the guidelines promulgated by the Sentencing Commission;
    (5)    any pertinent policy statement issued by the Sentencing Commission;

  (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
  (7) the need to provide restitution to the victims

18 U.S.C. § 3553(a). The advisory guidelines range constitutes one factor this Court must consider. *See United States v. Winters*, 416 F.3d 856, 861 (8th Cir. 2005). It deserve no greater weight than any other factor. *Id*.

## I Mr. Saddler's Community Involvement

Mr. Saddler's community involvement constitutes a part of his personal history and characteristics and, therefore, is relevant to sentencing under 18 U.S.C. § 3553(a)(1).

Mr. Saddler has contributed to the lives of children for some seventeen years. From 1994 through 1996, Mr. Saddler coached children's basketball at the Ridgewood, New Jersey, YMCA. In 1996, he moved to Los Angeles where he coached a YMCA traveling basketball team. The team played throughout Southern California and won the Western Regional Tournament. Mr. Saddler coached children's football that same year. In 2000, Mr. Saddler returned to St. Louis. From 2002 through 2004, he coached a Ballwin Little League Baseball team and a North County YMCA basketball team.

In 2002, Mr. Saddler joined the Boys and Girls Club Board of Directors. The Club provides disadvantaged children and teens with after school and summer activities, as well as free and low cost dental and eye care. In 2004, the Board oversaw construction of a new facility that offers a state of the art weight room and Olympic sized swimming pool.

In 2003, Mr. Saddler joined the Board of Directors of the Craft Alliance. The Craft Board developed programs to promote childhood art education and display the works of gifted children. The Board requested Mr. Saddler's resignation following his indictment. He submitted his resignation upon request.

Mr. Saddler donated $150,000 in 2003 to create the Parkway Pathways to Success ("PPS") program. PPS is a comprehensive "Second Chance" program for students who have received long-term suspensions, failed to make adequate academic progress or dropped out of school altogether. The Parkway School District operates the program in an effort to reintegrate at risk students into the standard Parkway curriculum. The details of the program have been to provided to this Court and the government in an attachment to this memorandum.

Mr. Saddler's long-term, active community involvement reflects his sincere effort to improve the lives of children and his real commitment to the larger community of which he is a part.

II      Mr. Saddler's Loss of Acceptance of Responsibility

The initial plea agreement into which Mr. Saddler and the government entered required Mr. Saddler to forfeit his home. Through counsel, Mr. Saddler renegotiated that provision of the agreement. Pursuant to that renegotiation, Mr. Saddler agreed to pay $100,000 restitution at the time of his plea and $100,000 restitution at the time of sentencing. In exchange, the government agreed to forego seizure of his home. Mr. Saddler could not raise the requisite funds by the date of his plea and has not done so to date. As a result, the government has re-instituted proceedings to seize Mr. Saddler's home. It has also moved for an increase in Mr. Saddler's advisory guidelines range of imprisonment because of Mr. Saddler's loss of acceptance of responsibility for his failure to abide by this provision of the agreement. As a result of that loss, the low end of Mr. Saddler's offense level increases by 9 months ( from 21 to 30 months). The high end increases by 10 months ( from 27 to 37 months).

The above increase in Mr. Saddler's advisory range of punishment is disproportionate to any harm occasioned by his failure to abide by the terms of his agreement. Mr. Saddler broke no

law and suffered no arrest to incur this added penalty.  He has, in fact, had no contact with law enforcement whatsoever and has not violated a single condition of bond while awaiting disposition of his case.  Moreover, Mr. Saddler quickly accepted responsibility for his offenses.  He entered plea negotiations prior to indictment, filed no motions and generally sought an efficient resolution of his case.  In addition, the government will receive the benefit it sought under the initial plea agreement:  Mr. Saddler's home.  The government, consequently, finds itself in no worse a position as a result of Mr. Saddler's failure.  In contrast, Mr. Saddler will both lose his home and assume a substantially worse position at sentencing.  This added penalty falls to Mr. Saddler though he did not wilfully fail to make the payment required under the agreement.  He simply could not raise the required funds, despite his best and honest efforts to do so. A meaningful difference, therefore, exists between Mr. Saddler and the many federal offenders who lose their acceptance of responsibility as a result of wilful violations of their plea agreement terms. This Court can and should take that difference into account in fixing the minimally sufficient sentence it is required to impose under 18 U.S.C. § 3553(a).

### III    Mr. Saddler's Reduced Likelihood of Recidivism Relative to other Criminal History Category I Offenders

The criminal history measure of the advisory guidelines principally estimates recidivism likelihood.  *See* U.S.S.G. Chapter 4, Introductory Commentary ("the specific factors included in § 4A1.1 and § 4A1.3 are consistent with the extant empirical research assessing correlates of recidivism and patterns of criminal behavior").  The measure relies primarily on two offender characteristics to produce its estimates:  prior convictions and prior terms of incarceration.  *See* U.S.S.G. 4A1.1; *see also* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev.

19, 24 (2003).  The United States Sentencing Commission's 15 Year Report, however, concludes there are additional offender characteristics, which if incorporated into the criminal history measure, would likely improve its predictive power.  *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate*, 16 (May 2004) [hereinafter *Recidivism Report*].  The Commission identifies age, education, employment, marital status, illicit drug use and the offense of conviction as characteristics likely to improve that power.  *Id*. at 12-13, 28, 30.  The failure of the guidelines to incorporate these characteristics into the structure of its criminal history measure reduces the predictive validity of that measure and reveals the recidivism likelihood profiles it produces are incomplete.  *Id*. at 16.  Offenders with dissimilar recidivism rates receive similar sentences as a result of this failure, a result at odds with the fundamental purpose of the guidelines[1].  In the instant case, the data demonstrate Mr. Saddler possesses an significantly

---

[1] "Similar treatment for similar offenders and different treatment for different offenders is the hallmark of fair sentencing. But this formal definition is incomplete because it does not tell us how to classify offenders as similar or different. (citation omitted). We need to identify which characteristics of offenses and offenders are relevant to our sentencing goals and to know how to classify offenders."
"In the federal system, sentencing goals are supplied by the statutory purposes of sentencing found at 18 U.S.C. § 3553(a)(2), which were prioritized by the federal sentencing guidelines. (citation omitted). The guidelines place primary importance on proportionate punishment, fitting the severity of the punishment to the seriousness of the offense. Offense characteristics bearing on the *harms* caused by the offense and the offender's culpability for those harms are especially relevant to assessing offense seriousness. The need to protect the public from additional crimes by the offender makes the offender's *risk of recidivism*, as measured by their criminal history, also highly relevant. Unwarranted disparity is eliminated when sentencing decisions are based only on offense and offender characteristics related to the seriousness of the offense, the offender's risk of recidivism, or some other legitimate purpose of sentencing."
*Fifteen Years of Sentencing, An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, United States Sentencing Commission , at 79-80 (November 2004) [hereinafter "15 Year Report"] (emphasis added).

reduced likelihood of recidivating relative to other offenders in Criminal History Category I.  Yet the criminal history measures assigns to him a likelihood of recidivating identical to that of all other offenders assigned to that same criminal history category.

Recidivism rates decline consistently as age increases.  *Id*. at 12.  Offenders in Criminal History Category I under the age of 21 recidivate at a rate of 29.5%.  *Id*. at 28.  Offenders in that same criminal history category between 21 and 25 years of age recidivate at a rate of 22.3%.  *Id*.  In comparison, offenders in Criminal History Category I over the age of 35 recidivate at a significantly lower rate: 12.1%, 17.4% less than those under the age of 21 and 10.2% less than those between the age of 21 and 25.  *Id*.  Mr. Saddler is 36 years old and will turn 37 on January 4th of next year.  *PSR* at ¶ 43.

Recidivism rates and education inversely relate.  *See recidivism Report* at 12.  Offenders in Criminal History Category I who do not graduate from high school recidivate at a rate of 21.3%%.  *Id*. at 29.  In contrast, Criminal History Category I offenders with some college education recidivate at a rate of 13.9%.  *Id*.  Mr. Saddler graduated from Parkway South High School on August 23, 1989.  *PSR* at ¶ 50.  He attended Farleigh Dickson University in New Jersey and the New York Institute of Technology following graduation.  *PSR* at ¶¶ 52-53.

Stable employment correlates with recidivism rates for offenders in the lowest criminal history categories.  *See recidivism Report,* at 12.  Criminal History Category I offenders with stable employment in the year prior to their instant offense recidivate at a rate of 12.7%.  *Id.* at 29.  Unemployed offenders in that same Criminal History Category recidivate at almost double that rate: 20.6%.  *Id*.  The presentence investigation report documents Mr. Saddler's history of employment over the last ten years. *PSR* at ¶¶ 53-67.

The offense of conviction also correlates with recidivism likelihood.  *See Recidivism*

*Report* at 13. Criminal History Category I offenders convicted of firearms related offenses recidivate at a rate of 23.7%. *Id*. Offenders in that same criminal history category convicted of robbery related offenses recidivate at a rate of 33.7%. *Id*. at 30. Mr. Saddler, in stark contrast, falls into a class of offenders who recidivate at a dramatically lower rate: 9.3%. *Id*.

Marital status correlates with recidivism rates, too. *Id*. at 29. Criminal History Category I offenders who have never married recidivate at a rate of 22.7%. *Id*. Criminal History Category I offenders involved in long-term relationships recidivate at a noticeably lower rate: 12.9%. Mr. Saddler and Ms. Christine Hong have been involved in a committed relationship for over ten years. *PSR* at ¶ 45.

Illicit drug use correlates with recidivism likelihood. *Recidivism Report* at 13. "Overall, offenders using illicit drugs within one year prior to their instant offense have a higher recidivism rate than those not using illicit drugs." *Id*. Criminal History Category I offenders who use illicit drugs in the year prior to their instant offense recidivate at a rate of 21.9%. *Id*. at 30. Criminal History Category I offenders who do not use illicit drugs in the year prior to their instant offense recidivate at less than one half that rate: 10.9%. *Id*. Mr. Saddler has no history of substance abuse. *PSR* at ¶ 50.

The U.S.S.C.'s data demonstrate an obvious correlation between recidivism and an identified set of offender characteristics: age, education, employment, marital status, illicit drug use and the offense of conviction. Mr. Saddler possesses a unique combination of these characteristics. That combination reveals Mr. Saddler's likelihood of recidivating is significantly diminished relative to other Criminal History Category I offenders. The advisory guidelines, however, fail to incorporate that set of characteristics into the structure of the criminal history measure. As a result, the advisory guidelines' fail to distinguish Mr. Saddler from other

offenders assigned to Criminal History Category I who do not possess the unique combination of characteristics he does possess and which, in the aggregate, reveal his greatly diminished likelihood of recidivism. That failure demonstrates the advisory guidelines range is, as applied to Mr. Saddler, greater than necessary to satisfy the sentencing purpose of incapacitation. *See* 18 U.S.C. § 3553(a)(2)(C).

**IV     Conclusion**

Post-*Booker* the mandate of sentencing courts has changed; sentencing courts may no longer uncritically apply the Guidelines. The remedial portion of *Booker* directs courts to consider each of the factors listed at § 3553(a), many of which the Guidelines either reject or ignore[2]. "Booker is not an invitation to do business as usual." *Ranum*, F.Supp.2d at 987.

> Sentencing will be harder now than it was a few months ago. District courts cannot just add up the figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual.

*Id.* Mr. Saddler is the individual this Court must sentence for the offenses committed. He is profoundly remorseful for his misconduct and dedicated to making a better future for himself, his family and the larger community with which he is attempting to reconcile. He is, in fact, making every effort to accomplish these ends. In light of this, counsel respectfully requests this Court

---

[2] "For example, under § 3553(a) a sentencing court must consider the 'history and characteristics of the defendant.'" But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, her education and vocational skills, § 5H1.2, her mental and emotional condition, § 5H1.3, her physical condition including drug or alcohol dependence, § 5H1.4, her employment record, § 5H1.5, her family ties and responsibilities, § 5H1.6, her socio-economic status, § 5H1.10, her civic and military contributions, § 5H1.11, and her lack of guidance as a youth, § 5H1.2. The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the 'history and characteristics' of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history." *Ranum* at 986.

carefully consider the information contained in this memorandum and impose a sentence that will permit Mr. Saddler to satisfy his restitution obligation, rebuild his failed career, provide for his family and prove to this Court that he is in fact an asset to the larger community of which we are all a part.  In this case, a sentence at the low-end of the originally calculated guideline range (21-27 months) will serve those purposes and surely prove sufficient, but not greater than necessary, to satisfy the statutory commands of 18 U.S.C. § 3553(a)(2).

                              Respectfully submitted,

                              ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

By:    /S/ N. Scott Rosenblum
        N. SCOTT ROSENBLUM
        Attorney for Defendant
        120 S. Central Avenue, Suite 130
        Clayton, Missouri 63105
        (314) 862-4332/Facsimile 862-8050

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 4:06CR00166 DJS |
| | ) |
| RICHARD SADDLER, | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7th, 2006, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Howard Marcus, Assistant United States Attorney.

**Sentencing Memorandum**

                ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

By:    /S/ N. Scott Rosenblum
        N. SCOTT ROSENBLUM, #4206
        Attorney for Defendant
        120 S. Central Avenue, Suite 130
        Clayton, Missouri 63105
        (314) 862-4332/Facsimile 862-8050